All right, we will continue with our next case, which is Root v. Comstock, number 251123. Counsel, Mr. Daniels, you may proceed. Good morning, Your Honor. I would like to reserve at least three minutes of my time for rebuttal, if the court allows. Your Honor, I represent Mr. Root, the appellant in this matter, where Mr. Root was an unarmed individual, did not pose a threat, serious fiscal harm to the officer or the public, and who was in an elevated position at the time, was tased by Officer Comstock, the appellee here. We appeal in the district court because we believe that the district court short-circuited the plaintiff's complaint at the motion to dismiss stage by embedding facts and deviating from the standard of review at a motion to dismiss stage. But one of the things I really want to focus on is the issue of the qualified immunity, the issue of clearly established at the time when Officer Comstock deployed his taser towards Mr. Root. Your Honor, this court is aware that when we look at qualified immunity, the law has to be clearly established at the time in a constitutional violation. However, this court not only look for cases within the Supreme Court, this circuit, but also look at weight authority outside of this court. And it is our position that at the time that Officer Comstock deployed his taser at Mr. Root, leaving Mr. Root a complete quadriplegic, is that it was not only established, it was well and clearly established that an should not deploy a taser on a person that's in an elevated position that doesn't call, that's not posing a threat of physical harm to the officer or the public. That's exactly what happened here. This case also deals with the issue, particularly when we're looking at the ground factors. And I think the most important thing when we look at the ground factors, we conceded the first and third factor that Mr. Root had, in fact, was suspected of committing a felony theft, a vehicle theft, and he was fleeing at the time. But the most important factor that we look at, was he a threat to the officer's safety, serious threat to the officer's safety of the public? Because we believe not only this taser, that's categorized as a non-lethal force, if it's used in a manner in which it was used, in this case, it is determined to be lethal force, deadly force. And this circuit have already determined what is considerably deadly force. Deadly force is force that carries with it substantial risk of serious injury or death. And tasing a person in an elevated position absolutely carries that potential risk. And Officer Comstock was placed on notice, not just a robust case law that's outside of this circuit, and we can get to that point. But not only that, he was placed on notice of his own department of policies, where it specifically says, forbids tasing a person, the officer shall not tase a person in an elevated position or on a surface that likely cause injury or death. Now, in that general order, it talks about excesses. And I think that excesses makes way when it is a circumstances where even though that person may be on the elevated surface, or that is cases where officers should be able to use force, even if that force constitutes as deadly force. It's a case that the district court cited, and I kind of want to point to it in the district cited, Wilson v. Lafayette case, where an individual who was suspected of committing a felony fled from the officers. In that case, the officer used his taser, and it was a beta ST that he used to search at the time. He didn't really parse out the issue, per se, with the taser, but more so with objective reasonableness. And in that case, and the district court kind of relied on that case to decide in this case, it's factually different. The seat in that case actually reached for a weapon, a potential weapon in his pocket and looked at officers. In this case, you have Mr. Root, who is running from law enforcement, away from law enforcement. He has a half a gallon of milk in his hand. He's clearly on an elevated surface, and Officer Comstock, with no risk to Officer Comstock, and the district court pointed to that it could have been a safety issue because he was running towards the street. However, the issues there, we're talking about deadly force being used on a potential safety issue, a distant hypothetical here. We're not talking about a situation where you see, without a doubt, you see a serious risk, danger to the public, at large, or law enforcement. And I think that's a bad policy where we give officers the right to shoot, and tell them not to shoot a person, as well as if you're using a chasing elevated position, it's kind of a distinction, a difference without distinction, per se, with the tool that's being utilized. And I think that's one of the issues where the district court, where the court of appeals in 11th Circuit, when they decided this issue in Bradley versus Benton, a 2021 case that predates this case that happened in 2022, where they went through the analysis, and it wasn't a case that wasn't, it wasn't, no case was directly on point in 11th Circuit with this issue. There was no binding authority or precedent in the Supreme Court, but they went to Tennessee Gardner, and they equate that shooting a person in an elevated position can amount to deadly force. And as we know in Tennessee Gardner, that you cannot use deadly force on a person that's fleeing, regardless of the fact they're a felony, it does not pose a danger to the officers or the public. That's well, clearly established out of Supreme Court. And this court has actually affirmed that issue recently, that's a couple of weeks ago, and I think Fuqua versus Santa Fe, where that a person, and they determined that a person that's fleeing is unarmed, they're causing a risk to the officer's safety or others, deadly force cannot be employed. And I think the issue with Judge DeMonaco is that the taser component of itself, the lethal, less than lethal, and as to whether a taser can be considered a deadly force, a tool that can cause deadly, can consider deadly force. This court have decided that already that tasers, police tools can be considered deadly force if they're used in a certain manner. For example, ass batons, if you strike a person in the head, then that can be considered obviously deadly force, it can result in death. Even handcuffs, even restraints, that's not even geared to be used in any manner. If you use it as a brass knuckles and strike a person multiple times, it can be considered deadly force. So I think the issue was a taser use, particularly versus a firearm, and I think there's a difference without distinction when you're talking about the placing of whether individual or the position, a vulnerable position, that a person is in. So counsel, could I just ask you, you early on talked about clearly established law, and now we're talking about whether tasering is deadly force. Is there a Tenth Circuit case holding that use of a taser is deadly force? No, there is not a Tenth Circuit case particularly saying a taser itself is use of deadly force, but it is a Tenth Circuit case that talks about what constitutes as deadly force, anything that causes substantial risk and death. In that case, the honor is, the honors to this case, this case is Rider versus City of Topeka, Kansas. And it says deadly force that the actor used with the purpose of causing that he knows to create a substantial risk or death or serious bodily harm constitutes as deadly force. And as our argument that using a taser in that position, Mr. Root was in, would constitute as deadly force. That is exactly what the Eleventh Circuit determined, as well as the Third Circuit and Peraza Benitez versus Smith. Although in that case, it was not necessarily dealing with a taser per se, it was dealing with an individual who was multiple times that caused paralyzing effect as a taser would and resulted in a fall. But within that case, that case goes through a litany of cases, particularly dealing with tasers, use of tasers as such. And I think one of the biggest things that the weight of authority that I'm talking about is outside of this circuit is that we're in that Peraza Benitez Smith case, the 2021 case, and it's quoted, it is widely known among law enforcement that tasers should not be employed against a suspect on an elevated surface because the risk of serious injury results in a fall. And this court is aware that a person struck with a taser, probes, is a neuromuscular shutdown. Back to clearly established law. To meet your burden, to show the law was clearly established. Do you need to rely on out-of-circuit cases to meet that burden? No, Your Honor. Actually, I think that in this situation, the case, it was so egregious and so well-known among law enforcement, the conduct of Officer Comstock, that you don't even necessarily need a case. Obviously, the fact by faith... So you rely on the obviousness argument for clearly established law? Yeah, that's one of the reliance that we have. If you had to rely on a case or cases for clearly established law, what are your best ones? I think that the best one is Brantley v. Benton is the best case out of the 11th Circuit, particularly the weight authority out of that circuit, where the courts determined that the height doesn't matter because it's well-known among law enforcement that a taser person that's in an elevated position carries a risk or a serious injury or death. In fact, the expert or taser instructor determined that in the depositions that's within that case. And Your Honor, I know it's not necessarily part of... How elevated? I mean, your complaint alleges that Mr. Root was running down an elevated slope, but can we tell from the complaint whether it was a gentle slope, a steep slope? What is meant by elevated? Your Honor, I think, and obviously the video was not attached, but however, this slope was significant in this case. Obviously, it doesn't matter that we would get through. How do we know that from the complaint? Well, we don't necessarily know it from the complaint. I think that is a kind of heightened standard that would be placed on the complaint at that stage. The fact that the complaint with itself says elevated, obviously, construing facts most like favor to the complaint, then the courts would have to show that this is an elevated position, albeit it may not... I mean, what does that... If we view it in a light most favorable to you, I mean, what does that mean? We have to assume it's four feet, assume it's a significant drop-off where somebody, if tased, would be likely to break their neck or do something like that? How do we view, basically, a vague fact in a light most favorable to you? I mean, how much running room do we have to give you? I think that the plaintiff should be given an inference in favor as to the elevation. I think that the main purpose here and point is that the elevation as relates to tasing a person in an elevated position, even if it's in the Department of Policy, Office of Comstock, there's no definitively or dimension as to what is determined elevated. A person could be standing in a chair, and there may be three feet off the ground, and that would be considered elevated that could result in serious injury or death if a person is tased. That's why the standard alone within law enforcement that you do not tase a person elevated position. This is sort of almost like a small hill you're talking about, right? It's not a steep drop-off or standing on a chair or standing on a wall or standing on a ladder. It's more of a small hill going up to the gas station. Is that right? No, Your Honor. It's very steep per se, but it's not just a small hill. If you're going to the gas station, it's a clear elevation from the gas station to the street or airport way here. I believe if we move forth in discovery, we'll be able to show that, particularly, and even with experts to show the dimension of that. The fact that Mr. Root was tased at the top of that peak of that elevation, he was not tased going further down the slope of the hill or elevation, you would call it. He was tased at the peak of the elevation and essentially flew down that elevated slope, causing his neck to strike against the curve, breaking it and rendering him quadriplegic. So this is not just a small hill we're talking about. It's more than that, Your Honor. This brings us back to the original point, I think, is that we can't tell any of this from the complaint. I think that the inference is drawn in favor of the non-moving party. We should be given a favorable inference here as such. And I think that that's the issue where the courts intervene as to whether saying the hill or the elevation itself wouldn't result in serious injury or death, which Judge Domenico did. So somehow Judge Domenico took out from the complaint that the hill or the elevation wouldn't cause a serious injury or death. It's within a footnote, I believe, in the judge's order. So that's the issue. The court should not be short-circuiting complaints at this stage when more information may be needed. The question is plausibility. Did we get across that finish line, that threshold under Iqbal and Twombly too, as to whether the plausibility that we stated a claim, which really can be granted, particularly if we're talking about the elevation element within this case? Your Honor, I would like to also point, not just to the qualified immunity issue, that Judge Domenico embedded facts in his claim to fit his analysis. For example, stating that Mr. Root was a danger to the officers due to the fact a prior incident where he fled and inadvertently struck one of the police officers' cars and tried to flee, in which a tracker was placed on him, and the benefit of the complaint that Mr. Root was running towards this busy street that would heighten the officers to use some sort of force towards him before he reached the street. Your Honor, that is not the standard here as when you're dealing with emotion at this next stage. And if we look at, we point to Barnes v. Felix, a recent Supreme Court case, when you're talking about use of force on the Fourth Amendment, you need to look at the totality of circumstances. The totality of circumstances here, previously they encountered Mr. Root, he fled, a tracker was placed, and when they found him and encountered him again, he was at the gas station with a gallon of milk in his hand, half a gallon of milk in his hand, running. He was no longer in possession of any vehicle or anything. Okay, counsel, you're over time now. Why don't you go ahead and sum up, and we'll turn to Mr. Stewart. All right, and the last thing, let's point to the dismissal of the Monel claims. Those claims are brought for ratification that the seat of Colorado Springs ratifies officers' behavior. I believe we met the Rule 8 standard, shared a Rule 8 standard that showed that those, the customs and policies created a pattern within the seat of Colorado Springs to believe that, given Mr. Root, the officer comes that, that he contains a person against his department of policies and gives well-known practices within law enforcement, and we ask this court to consider that as well. Thank you, counsel. Mr. Stewart. Good morning, your honors, and may it please the court, Brian Stewart for Officer Comstock and the city of Colorado Springs. Your honors, this case is about a reasonable split-second decision to stop a fleeing felony suspect. On May 16, 2022, Officer Comstock used his taser once to stop Mr. Root from running headlong into Airport Road. Officer Comstock deployed his taser only after Mr. Root had evaded and resisted every other less forceful arrest attempt. Because Officer Comstock's decision was inherently reasonable under the circumstances that confronted him, Judge Domenico correctly determined that he was entitled to qualified immunity. Officer Comstock is also entitled to qualified immunity because there is no clearly established law that instructs him not to use his taser in this situation. Mr. Root has not pointed to any case where this court has warned an officer not to tase a fleeing felony suspect simply because that person is running over some sort of undefined gradient. There's also no holding from this court that defines or even discusses the term elevated surface in a Fourth Amendment context, and the pending complaint does not contain sufficient facts to plausibly show that a reasonable officer would have viewed the ground that Mr. Root was on as ground being likely to cause a serious bodily injury when mixed with a taser. As such, Mr. Root has not met his burden under the qualified immunity doctrine and is not satisfied either prong. I'd like to go back to or start with the first prong of analysis. The district court correctly applied the three non-exclusive factors that are ubiquitous to every excessive force case, and all three in this case weigh in Officer Comstock's favor. As Mr. Daniels acknowledged during his presentation, they admit the first and the third factors. The only issue really here is the second factor, and that is would a reasonable officer view Mr. Root as a threat to the safety of others when Officer Comstock deployed his taser? Counsel, this is a threshold procedural matter. Did the opening brief actually address the Graham factors? Did our opening brief or Mr. Root's opening brief, sir? Mr. Root's opening brief. I don't believe his opening brief discussed the Graham factors. Right. I may have mentioned them, but I don't recall an in-depth analysis of them. Would it be fair to say, though, that because you addressed them that you've waived any waiver of that argument? Well, I suppose so, Your Honor. I mean, I think that's the test that this court applies. Did I answer your question, sir? Well, you didn't say anything about waiver, and you went ahead and addressed the factors, so I guess my question is whether the Graham factors are in play here. I think they are. I think they're in play in every excessive force case, but I will defer to the court. If the court views otherwise, certainly not contest you. Well, no, I'm asking if you waived the waiver, but I'm hearing is that maybe you did. I didn't realize it was something that, to be honest, that could be waived. It seems to me that those factors were applying in an excessive force case, and this is an excessive force case. Okay. I don't want to belabor the point. Why isn't Mr. Root entitled to a reasonable inference that running down a slope made him vulnerable, more vulnerable to serious injury from a taser? So what Mr. Root is doing is he's asking this court to view Officer Comstock's decision to use a taser as a decision to use deadly force, and what he's done is he's used this label of an elevated surface as a springboard for that analysis. But if we look at the definition of deadly force, deadly force, and I'm quoting Jaron Lakewood, deadly force is force that an actor uses with the purpose of causing or that he knows to create a substantial risk of causing death or serious bodily injury. And so we have to look at what Officer Comstock knew at the time and really what he intended, and there are no facts in the amended complaint that would suggest he intended this to happen or that he knew that Mr. Root would suffer this kind of injury. Well, I think you've gone beyond the question. My question was simply whether by alleging the elevated position or the elevated slope, I guess that's the phrase in such a circumstance poses a more serious and dangerous risk of serious bodily injury. I think running down a slope might impose some additional risk as opposed to a person running on level ground, but that doesn't make Officer Comstock's decision in this case unreasonable. We have to remember that Officer Comstock, when he tased Mr. Root, he had good reason to suspect Mr. Root of not just stealing that 2017 Ford Fusion, but also of using that car to crash into a police car at the Aspen Lodge. And then when officers caught up with Mr. Root at the Come and Go gas station, he again took flight and ran directly towards Airport Road. This is a public road. It's open to vehicular traffic, and running towards a public road and running into a public road is a very dangerous thing to do. Well, but wasn't there a little more to the context at that point? The allegation is that, and I think we have to accept the factual allegations as true, that he was unarmed and was fleeing. And so why didn't that make the tasering unreasonable? I understand your argument about the earlier parts of the incident, hitting the car, fleeing, and so forth, and the bolo wrap. But once we get to the point of tasing, don't we just have a suspect who is fleeing, unarmed, and on a downward slope? And if that's what we have, why isn't tasing unreasonable under those circumstances? I mean, does he really pose any threat? There's an enormous threat there. And it's not just to Officer Comstock, but it's to- How is he a threat to Officer Comstock if he's unarmed and fleeing? So I don't think we can presume that he is unarmed in this situation. Why not? I mean, don't we take the allegations that the complaint is true? So I apologize, sir. Let me rephrase. I don't think we can presume that it would have been reasonable for Officer Comstock to believe that he was unarmed in this situation. And remember, as Graham tells us, we view these incidents from the perspective of a reasonable police officer on the scene as the situation is happening. I mean, I know the court mentioned the hitting of the police car at the Aspen Lodge, but I mean, that's very relevant even to whether or not Mr. Root is armed or not, because that shows a degree of recklessness and a degree of dangerousness. And presumably, I mean, a car is a significant weapon. Mr. Root has already used that against police officers. But there's- I mean, these are two serious felony crimes, and there would be no reason for Officer Comstock just to presume that Mr. Root was unarmed. And he's running headlong towards a public road, and he's putting himself, he's putting Officer Comstock, if Officer Comstock chooses to follow him into that road, and he's putting every innocent driver traversing that road that may be on that road at that time in danger. And any passengers in those cars or any other- What do we know? I mean, again, we're at the pleading stage. All we should be looking at is the complaint, correct? So what do we know about this road? I mean, does the complaint provide that information that this is a busy road? The complaint just says he's running towards airport roads, sir, but it really- So what does that tell us? How do we get from there to it being a busy road and that he's just- Judge, I would submit that running towards any public road is an inherently dangerous thing to do. And it doesn't matter if that road is I-25 or if it's airport road or if it's a quiet residential street. In fact, the court in Singleton v. Cunningham, this is a case not in this district, but it did consider there were claims in that case where the suspect, that was his argument. He said I was- So if someone is crossing a quiet residential street and the police are pursuing that person, it's reasonable to tase that person. Is that- That person is running headlong towards a public road. Yes, sir. I would say so. We all public roads with caution because it only takes one car. And we don't- Any car could be on even a quiet street at any time. That's why you stop and you look both ways. And in this particular case, Officer Comstock tased Mr. Root before he was able to get all into that road. But doesn't the police department, the Colorado Springs Department policy call for a warning before tasering? So the policy says that a- Let me see if I have it right here. My reflection is that it says that a warning should be given if, I believe it says, if reasonable. But Mr. Root was given several warnings in this particular case. He was given a warning. Officers tried to surround that car and use absolutely no physical force to take the driver into custody at the Aspen Lodge and forces used against them. They tried again at the- Now, let me just ask you, Officer Comstock violate department policy when he didn't say stop or I'll tase you? No, sir. There's not- The policy does not require a taser specific warning. It's just a warning or a chance to comply with orders. And Mr. Root was given several opportunities to comply with police officers. So they don't have to- So there's no requirement to warn before they tase somebody? No, sir. And not- Also not in- Well, there's no requirement that they give a taser specific warning. The requirement is that they give the person a chance to comply with police officers to- before additional force is used, if reasonable, possible. And, your Honor, I'll point this- the court to the case of Thompson v. Salt Lake. And there, this court held that it wasn't necessary for officers to give a warning before releasing a police dog. So I don't think there's a constitutional- Mr. Root doesn't have a constitutional right to a taser specific warning in this case. I mean, the facts of the matter are, is that, you know, Officer Comstock's decision in this case was inherently reasonable. And Judge Domenico correctly determined that he did not violate Mr. Root's constitutional rights. But Officer Comstock also did not violate clearly established law. And Mr. Root has not pointed to a single case where this court has said that an officer violates the Fourth Amendment by using a taser to stop a fleeing felony suspect who has already evaded less forceful arrest attempts, a felony suspect who has already used force against officers, a felony suspect who is running directly towards a public road, quite possibly the most dangerous obstacle in that immediate area. There's no clearly established law that this- where this circuit defines the term elevated surface in an excessive force setting. And Mr. Root has not pointed to any case, any published case from any circuit that has used that term in connection with a slope, or as Judge Carson put it, a small hill. And neither has this court, and as Mr. Daniels has acknowledged, this court has not viewed a taser as an instrument of deadly force under any set of circumstances. So, simply put, there's- Mr. Root has not pointed to alleged facts or law that would have made it clear to Officer Comstock that using his taser in this situation was illegal. And for that reason, all those reasons, um, Judge Domenico's, uh, ruling was appropriate. I did want to point out, um, Mr. Daniels mentioned, uh, Bradley v. Benton and just wanted to kind of distinguish the facts of that case. My recollection of that case is that the person fleeing, uh, officers pulled over a police car for like a minor traffic infraction and the passenger got out of that car and immediately took off. He wasn't suspected of committing a felony. He wasn't suspected of committing a misdemeanor. He wasn't really suspected of committing any crime. Uh, and then the officer tased him on top of an eight-foot fence, and the court actually said that it was an eight-foot fence. We don't have facts like this here, and I see that I'm out of time, so I would appreciate the court, um, thank you for your attention, and we'd ask the court to affirm Judge Domenico's ruling. All right. Thank you, counsel. We're out of time for arguments, uh, for this case, so we will, uh, consider the case submitted, and counsel are excused, and, uh, thank you for your arguments this morning.